McDONALD (ZEREGA v.). See Case No. 18,-212.

# Case No. 8,771.

## In re MACDONNELL.

[11 Blatchf. 79.] [1]

Circuit Court, S. D. New York. April 12, 1873.

EXTRADITION—MANDATE FROM EXECUTIVE — COMMISSIONER—WORDS OF TREATY—WARRANT —HABEAS CORPUS—ADJOURNMENTS.

1. Whether a commissioner has jurisdiction to entertain proceedings for the apprehension of an alleged fugitive from the justice of a foreign government, with a view to his extradition under a treaty for that purpose, until a mandate or authority for his apprehension has been granted by the executive department of the government of the United States, quere.

[Cited in Re Kelley, Case No. 7,655; Re Stupp, Id. 13,563; Castro v. De Uriarte, 16 Fed. 96.]

2. The warrant for the arrest of the alleged fugitive, in this case, held sufficient.

[Cited in Ex parte Lane, 6 Fed. 36.]

3. In describing the offence charged, the warrant may follow the words of the treaty.

[Cited in Castro v. De Uriarte, 16 Fed. 95.]

4. It is not necessary that the complaint on which the warrant is issued should set forth the issuing of a mandate by the executive for the arrest of the fugitive.

5. If such mandate is a necessary prerequisite, it is sufficient for it to describe the offence charged, in the very terms of the treaty. The complaint, in this case, held sufficient.

[Cited in Re Adutt, 55 Fed. 378.]

6. It is not proper to resort to a habeas corpus, to review, during the progress of proceedings before the commissioner, decisions on questions as to evidence, made by the commissioner.

7. In extradition cases, the commissioner may, in his discretion, grant reasonable adjournments, in the course of hearing the evidence, to enable testimony to be produced.

[Cited in Re Wadge, 15 Fed. 866; Re Ludwig, 32 Fed. 774.]

On the 2d of April, 1873, a petition was presented to the Honorable LEWIS B. WOODRUFF, circuit judge, on behalf of George Macdonnell, stating that he had been arrested by the marshal of the United States for the Southern district of New York, and was now illegally held and restrained of his liberty; and that his arrest and detention were under color of a warrant issued by Joseph Gutman, Jr., a commissioner appointed by the circuit court for that district, and of certain proceedings pending before such commissioner, touching a charge against the petitioner, of having committed the crime of forgery within the kingdom of Great Britain and Ireland. The petition alleged the illegality of the proceedings, and of the arrest and detention, upon various grounds, which it is not necessary here to state, and it prayed a writ of habeas corpus to be addressed to the marshal, requiring him to produce the body of the petitioner. Another petition was, at the

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

same time, presented, praying that a writ of certiorari be issued, addressed to the said Joseph Gutman, Jr., commissioner, requiring him to return the proceedings had or taken before him, upon which the said warrant of arrest was issued, and which constituted the cause of the imprisonment, with all the testimony taken before him. Thereupon a writ of habeas corpus was issued to the marshal, and a writ of certiorari was issued to the commissioner. The writs were returnable on the 7th of April, 1873, on which day the marshal produced the prisoner before the circuit judge, at his chambers, and made return to the habeas corpus, that he arrested and held the prisoner by virtue of the warrant annexed to his return, issued by Joseph Gutman, Jr., United States circuit court commissioner, and the commitment to the custody of the said marshal, on the adjournment of the proceedings before the commissioner to the 8th of April, 1873. The substance of the warrant is stated in the opinion of the circuit judge. To the writ of certiorari the commissioner made return, the substance of which, together with the mandate of the president of the United States, upon the requisition of the British minister, the complaint made to the commissioner by the British consul general, the warrant of arrest, the proceedings on such arrest, the adjournments, the examination of witnesses, and the testimony taken, are also stated in the opinion, so far as material. To the return of the marshal the prisoner interposed an answer of a somewhat mixed nature, combining demurrer, plea, and traverse, and subsequently added a further supplemental allegation. The averments of the answer were: (1) "That the warrant and commitment are, and each of them is, insufficient in law to authorize and warrant the restraint and custody of the relator, by him, the said respondent" (the marshal). (2) "That the said warrant and commitment are, and each of them is, not sufficient in law to warrant such detention and custody of the relator, for the following reasons, to wit: First. The magistrate had no jurisdiction to issue the warrant, because no sufficient complaint had been presented to him at the time the warrant was issued. Second. The complaint upon which said warrant was issued does not make out a case against the said relator, giving jurisdiction to the commissioner. Third. The said complaint and warrant contain no description of any specific offence alleged to have been committed by the relator, and embraced within the treaty of extradition between the government of the United States and the government of Great Britain. Fourth. The said complaint, upon which said warrant was issued, does not show that any requisition, previous to the making thereof, had been made, under the authority of the British government, and that the authority of the government of the United States had thereupon been obtained for the apprehension and

committal of the relator. Fifth. The commitment referred to in the return aforesaid is based upon an insufficient complaint and warrant, issued without jurisdiction by the said commissioner had for that purpose. Sixth. The said complaint, the said warrant, and the said commitment, are informal, illegal and otherwise, as hereinbefore set forth, not sufficient in law to justify the detention and custody of the said relator by the said respondent." The supplemental allegation was, that "the mandate of the president of the United States, upon the requisition of the British government, does not describe the offence alleged in the complaint herein." The return of the commissioner to the writ of certiorari, with the documents and proceedings thereto annexed, were produced and made a part of the proceedings under the habeas corpus.

Charles W. Brooke, for prisoner.

Charles M. Da Costa and Francis F. Marbury, for the British government.

WOODRUFF, Circuit Judge. In announcing my conclusion upon the application for the discharge of the prisoner, I shall not occupy time in a preliminary history of the proceedings before myself, or before the commissioner, as might be proper if I were preparing a report of the matter, or an entire record, in order to give a complete history of the case. The argument, involving a review of every step in the proceedings, and each document and process, is so recent, that counsel are quite familiar with each, and, to some extent, the statement of the reasons for my conclusions will furnish occasion to recite the substance of whatever is important to make those reasons intelligible.

It is not, in the present case, necessary, that I should express an opinion upon the proposition which is at the foundation of the argument on one branch of the claim made in behalf of the prisoner, namely, that a commissioner has no jurisdiction to entertain proceedings for the apprehension of an alleged fugitive, until authority for that purpose has been granted by the executive department of the government of the United States. See the Treaty with Great Britain, of August 9, 1842 (8 Stat. 576, art. 10); Act Cong. Aug. 12, 1848 (9 Stat. 302). Mr. Justice Nelson, in the case of Ex parte Kaine [Case No. 7,597], affirmed the proposition, and made the absence of such authority at the time of the institution of the proceeding one of the grounds upon which he discharged the prisoner, notwithstanding the president, on the report made to him of the facts found by the commissioner, and the evidence thereof, had so far ratified what had been done as to issue his warrant for the surrender of Kaine to the authorities of the British government. In this decision he conformed to the dissenting or minority opinion expressed

by him, with the concurrence of Chief Justice Taney and Mr. Justice Daniel, in Re Kaine, in the supreme court. 14 How. [55 U. S.] 103. That opinion stood opposed to the opinion delivered by Mr. Justice Catron, with the concurrence of Justices McLean, Wayne and Grier, to the effect, that the commissioner acts, in receiving a complaint, issuing his warrant for the arrest, and taking and certifying the proofs, by a jurisdiction expressly conferred upon him by law, by the treaty, and by the act of congress; that his power and authority, in these particulars, exist independently of any mandate or command of the president, to be obtained in advance of such proceeding; and that, whatever may be the requirement of the acts of the British parliament on that subject, the congress of the United States did not think it necessary to the dignity of the nation, the protection of the accused, or on any other ground, and, especially, in view of the inconvenience which it involved, and the great facility it afforded for the escape of the fugitive, and for defeating the purposes of the treaty, to require that the aid of the president should be invoked until the preliminary inquiry had been made before a magistrate. They go still further, and insist, that to hold the contrary is to permit an interference by the executive with the judiciary, against the intent, principles and legal effect of our system of government, which make the action of the judiciary, in the discharge of all functions properly judicial, independent of executive interference; while, on the other hand, the act of surrender, after, by a judicial inquiry, the facts are ascertained, is confessedly an exercise of political power, to which the president alone is competent. The supreme court of the United States, at that time, consisted of eight judges. The opinion of four of the judges was not sufficient to result in authoritative adjudication. Mr. Justice Nelson's opinion was sustained, on all points, by Chief Justice Taney and Mr. Justice Daniel; and Mr. Justice Curtis declined expressing an opinion upon the merits, on the ground that the supreme court had no jurisdiction of the matter, as it was then before them. The proposition, therefore, stood, at that time, as the opinion of three judges of the supreme court, on the one hand, and four judges on the other, not authoritatively adjudicated. Mr. Justice Nelson, therefore, when the Matter of Kaine was continued, before him, under the writ which he had originally allowed [Case No. 7,597], felt himself at liberty to be governed by the views he had expressed in the supreme court. The Cases of Veremaitre [Id. 16,915], Kaine [Id. 7.598], and cases referred to therein, and Heilbronn [Id. 6,323], and others, reported and unreported, show, that the district judges in this circuit had acted upon, and concurred in, the views of the four judges of the supreme court, above stated; and the practice before commissioners had conformed

thereto, down to the decision made by Judge Nelson.

The two cases of Henrich [Id. 6,369], decided by Judge Shipman, and of Farez [Cases Nos. 4,644, 4,645], decided by Judge Blatchford, are placed distinctly on the authority of Judge Nelson's decision in the Case of Kaine [supra], so that it may properly be said, that this claim on behalf of the prisoner rests on that opinion, supported by the concurrence of Chief Justice Taney and Justice Daniel, and disaffirmed by Justices Catron, McLean, Wayne and Grier, and the opinions and practice of the district judges. I advert to these particulars for the purpose of bringing together, in brief, the history of the subject, and of stating the extent of the authority in this circuit, upon which the proposition urged on behalf of the prisoner rests. What has been the ruling or practice, on this subject, in other circuits of the United States, counsel have not advised me by reference to any cases there decided.

The counsel for the British government insist, that the terms of the treaty (8 Stat. 576, art. 10), and, especially, the act of congress of August 12, 1848 (9 Stat. 302), passed to carry the treaty into effect, operate to confer the jurisdiction, and that, at the instance of the proper officer of the British government, the designated magistrate may, and must, upon complaint made, issue his warrant to arrest the alleged fugitive, according to the terms of the statute, which, confessedly, does not expressly suggest that any prior action of the executive is to be invoked; and they further insist, that, in the conflict of opinion above referred to, they have a right to call on me to act upon my own opinion of the true construction of the treaty and of the act of congress, in the particular thus in contest. It is, of course, not doubted, that, before any surrender can take place, the proceedings before the commissioner, with all the proofs taken, must be submitted to the executive, and that the final question, whether the case made is such as to require the surrender, may be considered by the president, without whose warrant no surrender of the fugitive can lawfully be made. I repeat, however, that it is not necessary for me to decide, in this case, to what extent I am bound by the decision made, or the opinion declared, in Kaine's Case, nor that I should express an opinion upon the question itself, for the reason, not only that the mandate of the president was procured, and delivered to the commissioner, before he acted in this matter at all, but also, because, in my judgment, the objections here made to the actual proceedings had by or before the commissioner, may be considered and decided upon a concession, for all the purposes of this case, that such mandate, or other authorization by the president, was necessary.

I. I proceed, therefore, first, to the enquiry: Is the warrant, in virtue whereof

the respondent herein made the arrest, sufficient, on its face, to justify him in arresting and detaining the alleged fugitive? On that question I entertain no doubt. It may be conceded, for the purposes of this question, that the commissioner by whom it was issued acted therein in exercise of a special jurisdiction, of such sort, that, to justify the marshal in making the arrest, every fact necessary to the jurisdiction of the commissioner to issue such a warrant must appear upon its face. The warrant distinctly refers to the treaty between the United States and Great Britain, and the act of congress of 1848, for giving effect to that treaty, as the basis of the proceedings before the commissioner. It recites and certifies, that the commissioner is specially appointed to execute the act of congress referred to. It further recites, that, upon the application of the envoy extraordinary and minister plenipotentiary of Great Britain, duly accredited to the government of the United States, made under the 10th article of the said treaty, for the arrest of George Macdonell, otherwise Macdonnell, charged with the crime of forgery, and with the utterance of forged paper, at the city of London, in that part of the kingdom of Great Britain and Ireland called England, between the 22d day of January and the 28th day of February, 1873, (referring, also, to the recited complaint, for further particulars of the alleged offence,) a mandate was issued by the department of state, on the 13th day of March, 1873, under the seal of the state department, signed by the secretary of state, and directed to any commissioner specially appointed to execute the aforesaid act of congress. It further recites, that, under the said treaty, complaint has been made before him, (the said commissioner,) that one George Macdonell, otherwise Macdonnell, did, heretofore, between the 22d day of January and the 28th day of February, in the year 1873, at the city of London, in that part of the United Kingdom of Great Britain and Ireland called England, and within the jurisdiction of her said Britannic majesty, together with one Edwin Noyes, now in custody, in the said city of London, and Frederick Albert Warren and George Bidwell (now fugitives from justice,) commit the crime of forgery, and the utterance of forged paper, to wit, did feloniously, in said city, and at the time aforesaid, forge and utter, well knowing the same to be forged, two several acceptances of two several bills of exchange, each for the payment of one thousand pounds sterling, lawful money of Great Britain and Ireland aforesaid, with intent thereby to defraud the governor and company of the Bank of England, a corporation duly created by, and existing under, the laws of the United Kingdom of Great Britain and Ireland aforesaid, and did conspire together to commit the said offence, with intent to defraud the said governor and company of the Bank of England; and that

the said George Macdonell, otherwise Macdonnell, is now seeking an asylum within the territory of the United States. After these recitals the warrant proceeds to command the marshal to arrest the said George Macdonell, otherwise Macdonnell, and bring him before the commissioner, in order that, pursuant to the directions of the said mandate, the evidence of criminality of the said George Macdonell, otherwise Macdonnell, may be heard and considered, and, if found sufficient to sustain the charge, that the same may be certified, together with all the proceedings, to the secretary of state, that a warrant may issue for the surrender of the said George Macdonell, otherwise Macdonnell, pursuant to the said treaty. The warrant is under the hand and seal of the commissioner, who, with his signature, certifies to his special authority to execute the act of congress mentioned.

Passing, for the moment, the suggestion, that neither the complaint nor warrant sufficiently describes an offence within the treaty, the warrant, in the fullest manner, meets every possible requirement of the law. It shows, on its face, every fact which is even here claimed to be requisite to the jurisdiction of the officer, that such jurisdiction has been regularly and formally invoked, for the arrest of the alleged fugitive, and it declares, in terms, the special authority upon which the proceeding is based, to wit, the treaty, the act of congress, and the appointment of the officer to execute the law. It declares the demand of the foreign government, the mandate of our own, and the offence charged. The description of the offence might, in my opinion, for all purposes of insertion in the warrant of arrest, have followed the words of the treaty. The reference to the treaty and the act passed to carry it into effect, identifies the charge with the treaty itself, and makes a charge of the offence of forgery import, per se, a charge of the offence of forgery mentioned in the treaty. This is all that is essential to jurisdiction of the subject-matter. It is not necessary that the particulars required to be proved, in order to establish the offence mentioned in the treaty, should be specified in the warrant; nor is it any part of the province of the warrant to disclose the details, in order that the prisoner may be notified of those details. Forgery is the offence for which the treaty provides, that, it being charged, the magistrate shall proceed. The warrant, reciting the other jurisdictional facts, declares that, "on complaint to the officer, 'forgery' is charged," &c. If there were no other detail or specification, I should hold, that, for all the purposes of the warrant of arrest, this was sufficient.

It follows, that there is no defect in the warrant, and that it is sufficient, on its face, to justify the marshal in arresting and holding the prisoner. Hence, if there be any illegality in the proceeding, or want of juris-

diction in the commissioner to detain the prisoner in custody for taking of proofs, it must be sought in the proceedings brought up by the certiorari.

II. The return to the certiorari shows, that, on the 18th of March, 1873, Edward Mortimer Archibald, Esq., her Britannic majesty's consul-general at the port of New York, presented to the commissioner the mandate issued by the department of state of the United States, annexed to the deturn, and, at the same time, made the complaint, upon oath, which is also annexed.

The mandate is addressed to any justice or judge of the several courts therein named, or to any commissioner specially authorized to execute the acts of congress of August 12, 1848 (9 Stat. 302), and of June 22, 1860 (12 Stat. 84), and recites, that, pursuant to the tenth article of the treaty of the 9th of August, 1842 (8 Stat. 572), between the United States and Great Britain, for the mutual delivery of criminals, fugitives from justice, in certain cases, Sir Edward Thornton, accredited, &c., * * minister plenipotentiary of her Britannic majesty, has made application to the government of the United States, for the arrest of George Macdonell, charged with the crime of forgery on the Bank of England, and alleged to be a fugitive from the justice of Great Britain, and who is believed to be within the jurisdiction of the United States, and that it appears proper, that the said George Macdonell should be apprehended, and the case examined, in the mode provided by the acts of congress aforesaid, and declares, that, to the end that the above-named officers, or any of them, may cause the necessary proceedings to be had in pursuance of said acts, in order that the evidence of the criminality of the said George Macdonell may be heard and considered, and, if deemed sufficient to sustain the charge, that the same may be certified, together with a copy of all the proceedings, to the secretary of state, that a warrant may be issued for his surrender pursuant to said treaty. the secretary of state certifies the facts recited. This mandate is dated March 13th, 1873, is authenticated by the seal of the department of state, and is signed by the secretary.

The mandate having recited the application of the British government for the surrender of George Macdonell for the crime of forgery, under and in pursuance of the treaty, the complaint itself begins by appropriate reference to that application, that is to say, it is entitled, "In the matter of the application for the extradition of George Macdonell, otherwise Macdonnell, under the treaty between the United States and Great Britain;" and thereupon, upon oath, the complaint charges, that one George Macdonell, otherwise Macdonnell, did, heretofore, between the 22d day of January and the 28th day of February, in the year 1873, at the city of London, in that part of the United Kingdom of Great Britain and Ireland called England, and within the jurisdiction of her said Britannic majesty, together with one Edwin Noyes, now in custody, in the said city of London, and Frederick Albert Warren and George Bidwell, (now fugitives from justice,) commit the crime of forgery and the utterance of forged paper, to wit, did feloniously, in said city, and at the time aforesaid, forge and utter, well knowing the same to be forged, two several acceptances of two several bills of exchange, each for the payment of one thousand pounds sterling, lawful money of the United Kingdom of Great Britain and Ireland, aforesaid, with the intent thereby to defraud the governor and company of the Bank of England, a corporation duly created by, and existing under, the laws of the United Kingdom of Great Britain and Ireland, aforesaid, and did conspire together to commit the said offence, with the intent to defraud the said governor and company of the Bank of England; that the said George Macdonell, otherwise Macdonnell, is a fugitive from the justice of Great Britain, and did, on the 8th day of March, in the year 1873, sail, on board the steamship Thuringia, bound for the port of New York, for the purpose of seeking an asylum within the territory of the United States; and that the crime of which the said Macdonell, otherwise Macdonnell, has so as aforesaid been guilty, would justify his apprehension and commitment for trial for such crime, if the same had been committed within the said Southern district of New York, or within the jurisdiction of the district court of the United States for the Southern district of New York.

The commissioner further returns, that, upon such mandate and complaint, he issued to the marshal the warrant for the apprehension of the said alleged fugitive, of which warrant he annexes a copy, the substance of which has been above stated; that, on the 20th day of March, 1873, the said George Macdonnell was brought before him, in the custody of the said marshal, and that, on being advised of the charge against him, he desired an adjournment, upon which the commissioner adjourned the examination to the 25th of March, 1873, committing the prisoner, meanwhile, to the custody of the marshal; and that, on the 25th of March, 1873, the said George Macdonnell was brought before the commissioner, was attended by counsel, and proceedings were had, which appear by the record thereof annexed, whereupon the proceedings were adjourned to the 8th of April, 1873, at 12 o'clock, noon, and meanwhile the prisoner was committed to the marshal, to be then produced.

The record of the proceedings shows, that, on the 25th of March, the counsel for the prisoner moved to dismiss the complaint and warrant, upon grounds not materially unlike those urged on the present hearing; that three witnesses were examined, whose tes-

timony is given; and that, in the course of the examination, a document was produced and put in evidence, against the objection of the counsel for the prisoner, which purported to be a warrant issued March 8th, 1873, by the lord mayor of London. for the arrest of George Macdonnell, charged with having forged, in the month of February last. two bills of exchange, for one thousand pounds each, which warrant the counsel for the prosecution claimed to be sufficiently proved to entitle it to be read in evidence. The record states, that, thereupon, the counsel, "Mr. Da Costa, applies, on affidavit. for adjournment, and states that depositions duly certified are en route. Mr. Brooke (counsel for the prisoner) objects to adjournment, and applies for discharge of prisoner. Mr. Da Costa, stating that depositions had been received which had not been duly certified under the act, Mr. Brooke demands names of witnesses whose depositions are under way." "Adjourned, under objection, to April 8, 1873, at 12 m., and defendant remanded to the custody of the marshal." It is proper to add, that the several commitments of the prisoner to the custody of the marshal, to be produced on the days to which the examination was adjourned, appear by the marshal's return to the writ of habeas corpus.

Upon the papers and proceedings thus returned by the commissioner, several objections are now made, on behalf of the prisoner, which. it is claimed, go to the jurisdiction of the commissioner, and point out such defects that the whole proceeding before him is without jurisdiction and void, and, therefore, require me to discharge the prisoner from custody. Without giving the precise language of the several objections, they may be briefly stated as follows: The commissioner had no jurisdiction to issue the warrant, and has no jurisdiction to hold the prisoner for the purpose of taking proofs, because—

First. The complaint made to the commissioner does not show that, prior to the making thereof, any requisition had been made under the authority of the British government. and that the authority of the government of the United States had thereupon been obtained for the apprehension and committal of the relator.

Second. Neither the complaint, nor the mandate which was presented to the commissioner, sufficiently charged the prisoner with any specific offence, within the treaty of extradition, to give to the commisioner jurisdiction.

1st. The first objection, of course, assumes, that the prior authority of the government of the United States was necessary before the commissioner could exercise any jurisdiction in the matter, and it pushes the doctrine of the case holding that proposition one step further. that is to say, that the complaint made to the commissioner. of the offence charged, and to be inquired of, must

itself state that such mandate had issued on the application of the foreign government; and that it is not sufficient that the fact exists. that the mandate has issued to the commissioner. upon due application, and has been placed in his hands, but the complaint of the commission of the offence must state that it has issued.

Certainly, nothing in Ex parte Kaine [Case No. 7.597]. warrants this claim. So far as it is supposed to be sustained by express prior adjudication, an observation of Mr. Justice Blatchford, in In re Farez [Id. 4.-644], is relied upon. The observation is in these terms: "As the proceeding is a special proceeding, I think it is necessary, not only that the complaint made to the commissioner, upon which the warrant is asked, should show that such a requisition has been made upon the government of the United States. and such authority obtained from it, but that those facts should also be set forth on the face of the warrant. As the first warrant contained no such allegation, it is not valid." He was discussing the validity of the warrant, not the sufficiency of the complaint. His proposition was, that. in a special proceeding of this kind. it is necessary to the justification of the marshal that all facts essential to the jurisdiction of the commissioner should appear on the face of the warrant. If the expression used by him must be taken to import that it is equally essential that the requisition and mandate should be averred in the complaint, it was not called for by the point actually decided. I am not at all satisfied that such was the intention. The observation itself and other parts of the case indicate, that all he meant was, that it is not enough that it is found in the complaint; that it must appear in the warrant, that the requisition has been made and the mandate issued; and that its presence in the complaint will not cure the defect in the warrant. If the observation means more than this, I must withhold my concurrence.

The language of the learned counsel for the prisoner, in treating of the indispensable necessity of such requisition and mandate, to give the commissioner jurisdiction, calls such mandate "the commission of the officer." pro hac vice. If that be so, then the point now taken is this: A complainant must set out in his complaint which he presents to the officer, the authority of the officer to receive it. This is not required in ordinary complaints of crimes under state laws or the laws of the United States. It is enough, that the complaint avers a crime, and that such complaint is made to an officer who has legal authority to receive and act upon it. The act of 1848, to give effect to the treaty. in terms declares, that the officers named are severally vested with power, jurisdiction and authority, "upon complaint made, under oath or affirmation, charging any person found within the limits of any state. district, or territory, with having com-

mitted, within the jurisdiction of such foreign government, any of the crimes enumerated or provided for by any such treaty or convention, to issue his warrant," &c., &c. The allegations of the complaint are addressed, and may be wholly addressed, to the commission of the offence. That is all that the statute requires. It is all that the reason and good sense of the proceeding requires. The party complaining, having found a proper officer, an officer having actual and legal jurisdiction, may properly address himself to such officer, not averring, but assuming, such jurisdiction. This is in analogy to other proceedings in courts of justice. True, the complainant ought, in some form, to lay before the commissioner all facts necessary to invoke, and warrant the exercise of, the jurisdiction; but, that is all. What the commissioner does, upon complaint of those facts, will depend, for its validity, upon his jurisdiction to act on those facts, and that may become the subject of objection, inquiry and proof. This was manifestly the view of Judge Nelson himself, when he decided the case of Ex parte Kaine [supra], although he did not particularize the forms of procedure. On proof that authority had been given by the president for the arrest of Kaine, he offered to withhold the discharge, and proceed himself to take evidence which might warrant the surrender, clearly showing how that learned judge, in the administration of this law, as in other cases, while tenacious of all that he deemed material either to the right observance of law, or to the preservation of the dignity and honor of the government, or essential to the protection and safety of parties charged, did not allow himself to be carried away by undue and needless regard for the mere forms of proceeding. I infer, from what is stated at the conclusion of his decision in Kaine's Case, that, had counsel been able to show, that, before any proceedings were taken for the arrest of the alleged fugitive, the authority of the president had, in fact, been given, he would have taken the proceeding, as it then stood, on the arrest already made, and received proofs which might result in the surrender of the fugitive.

In the present case, moreover, the proceeding before the commissioner may, properly, be regarded as a single, connected proceeding, of which each of the steps forms a part, and all, together, constitute a complete record of jurisdiction. The mandate of the government of the United States was presented to the commissioner, showing the requisition of the British government for the extradition of George Macdonell, in pursuance of the treaty, and calling upon the commissioner to cause the necessary proceedings to be had in pursuance of the acts of congress referred to, in order that the "evidence of the criminality of the said George Macdonell may be heard and considered, and, if deemed sufficient, may be certified * * * and that

a warrant may issue for his surrender, pursuant to said treaty." This, (if, as here claimed, essential to the jurisdiction of the commissioner,) was the very first step in the proceeding, and became a part of the record thereof. The complaint then follows, entitled in the very matter of the requisition and mandate, that is to say, "In the matter of the application for the extradition of George Macdonell, otherwise Macdonnell, under the treaty between the United States and Great Britain." This appropriately connects the complaint with the requisition already shown by the mandate, establishes complete identification, and becomes the next step in the record. The two papers together establish complete jurisdiction. I do not mean to be understood that this reference, in the complaint, in terms, to the requisition and mandate, was indispensable. I have above said the contrary; but it was appropriate and is quite sufficient.

2d. The second objection, as argued, embraces several particulars: (1) That the mandate does not describe, with sufficient particularity, an offence within the treaty; (2) that the complaint, on which the warrant of arrest was issued, does not sufficiently describe such offence; (3) that the descriptions of the offence, as contained in the mandate and complaint, do not, on their face, sufficiently appear to be identical; and (4) that there is a variance between the requisition and mandate, on the one hand, and the complaint and warrant, on the other, in this, that the requisition and mandate describe the offender as "George Macdonell," while the complaint and the warrant describe the offender as "George Macdonell, otherwise Macdonnell," so that, by reason of the variance in this respect, non constat that the prisoner is the person for whom requisition was made, or to whom the mandate relates.

(1) There is no especial form prescribed by law, in which the governement of the United States shall (assuming it to be necessary) give its authority to the commissioner to proceed in the matter. It is enough that the government recognizes the application of the foreign government, and gives authority for institution of proceedings for the ascertainment of the facts alleged to bring the case within the treaty. It is enough that the authority, when given, describes the particular charge to be investigated, in the very terms of the treaty, in aid of the execution whereof the proceeding is directed. Hence, if the government sees fit to describe the subject-matter in general terms, as a charge of "murder," or a charge of "forgery," that is sufficient, designating, of course, the alleged offender and fugitive to be proceeded against. Such language in a mandate which is, in terms, issued in pursuance of the treaty, imports that it is a charge of murder within the treaty, or a charge of forgery within the treaty. The authority it confers is for the investigation of the charge of an offence

within the treaty. That the mandate authorizes, and not the investigation of any other or different offence. Whether the proofs, when given, to establish such an offence within the meaning of the treaty, sufficiently warrant a commitment, it is for the commissioner to consider and report to the executive.

(2) The sufficiency of the complaint was discussed on the argument very much as if it were a question of its sufficiency as a pleading; and the reasons assigned for the objection were, mainly, such as are apt to require definiteness, particularity, and the absence of all variance, upon the most technical rules of pleading. Such technical precision is not required in a complaint, for the mere purpose of jurisdiction to proceed thereon. For, be it remembered, that the point under consideration is, that the commissioner had not jurisdiction to proceed, on such a complaint, to the issuing of a warrant; and it is argued, that the present complaint fails to give such jurisdiction, because it does not describe the alleged forged instruments with sufficient particularity as to date, names of the persons whose acceptances were forged, and the times of payment thereof. The complaint does state, that the alleged offender "did, heretofore, between the 22d day of January and the 28th day of February, in the year one thousand eight hundred and seventy-three, at the city of London, * * * within the jurisdiction of her said Britannic majesty, * * * commit the crime of forgery and the utterance of forged paper, to wit, did feloniously, in the said city, and at the time aforesaid, forge and utter, well knowing the same to be forged, two several acceptances of two several bills of exchange, each for the payment of one thousand pounds sterling, lawful money of the United Kingdom of Great Britain and Ireland, * * * with intent thereby to defraud the governor and company of the Bank of England, a corporation duly created by and existing under the laws of the United Kingdom of Great Britain and Ireland aforesaid." What follows in regard to conspiracy, I regard as of no importance to the present question. If it does not strengthen the case made against the accused, it may be regarded as surplusage, and certainly does not change or alter the meaning or effect of what I have cited from the complaint. The question is, does what I have thus cited show a case of forgery, within the treaty? Not whether it would constitute an indictment free from special exception. I have no hesitation in saying that it does charge the crime of forgery at the common law, however it may fail to describe it with the particularity required in a formal indictment for the offence.

I do not deem it necessary to question what is said touching the requisites of the complaint in this respect, in Re Henrich [Case No. 6,369], or in Re Farez [Id. 4,644]; but I am of the opinion that the description of the offence here does satisfy the requirement of the act of 1848, which authorizes the officer to issue his warrant "upon a complaint charging any person * * with having committed * * any of the crimes enumerated or provided for by such treaty."

To the suggestion, that it may be true, and may appear, when the specific instrument is produced, that the prisoner had authority to sign the name or names alleged to be forged, it must suffice to say—that is matter of defence—the subject of proof. Enough for the complaint, that it shows a prima facie case of forgery.

So, to the suggestion, that, between the days named there may be a large number of acceptances, each of which would answer the description in this complaint—every possible conjecture on the subject need not be excluded by the terms of the complaint. It would be possible to suggest the same thing, if the complaint named a precise date, with names, and when payable, &c., or even gave a copy of the bills of exchange. Enough, as already said, that the complaint makes a prima facie case; that is to say, this is enough to give jurisdiction to the commissioner. It is in that aspect alone that I am considering it.

That the party should be fairly apprised of the charge made, and with such fullness as is reasonably necessary to enable him to meet the investigation, may be conceded; but that appertains, after jurisdiction is acquired, to the conduct of the proceeding, and there is no danger that, for all the purposes of the inquiry, whether he ought, upon the proofs, to be committed, the investigation will not furnish him with that information, in respect to any detail not contained in the complaint as it now reads. It is the duty of the commissioner to proceed with entire fairness towards the prisoner, in every respect. The presumption is that he will do so. It is sufficient for the question before me, that he has jurisdiction for that purpose.

(3) The mandate and the complaint are in perfect harmony. I have already said, that I deem the mandate sufficient. It is no ground of objection, that the complaint is more specific than the mandate. Upon the assumption that the mandate was necessary, and required the officer to receive the complaint, there arises the legal inference, that the complaint made refers to, and charges, the same offence. Upon the argument submitted, whenever the complaint embodied more details than were given in the mandate, it could be successfully insisted, that they did not appear to be identical, and, therefore, jurisdiction did not appear by the complaint.

(4) As to variance between the mandate and the complaint and warrant, because, in the former, the alleged offender is called "George Macdonell," and, in the latter "George Macdonell, otherwise Macdonnell," I think there is nothing in the objection. The warrant, as already seen, recites the requisi-

tion and mandate, and shows, unequivocally, that the warrant is issued· in pursuance thereof, and that it directs the arrest of the alleged offender named therein. The suggestion in the nature of an alias, contained therein, does not describe a different person, but seeks to aid in his complete identification. I do not doubt that the alias designation might, if it were of any importance, be regarded as surplusage; but it cannot properly be construed as indicating another person. Identity of name raises the presumption of identity of person.

Like observations are pertinent to the supposed variance in this respect between the mandate and the complaint, which, as already suggested, form parts of the same record.

Finally, I must decline considering the matter not alleged by way of plea or traverse to the return of the marshal, but urged on the argument, namely, that the commissioner has already, in the progress of his proceeding, received in evidence a document which was not legally admissible. If that suggestion were well founded, it would not defeat his jurisdiction. What may be the effect of the reception of the evidence, if it were deemed inadmissible, even whether, in case the facts were otherwise clearly proved, it would have any effect to avoid the finding of the commissioner, it is unnecessary now to say. The decision in Re Farez [Case No. 4,646], is to the effect, that an error of that description does not defeat the jurisdiction of the commissioner, or invalidate the arrest · upon the warrant, or entitle the prisoner to be .discharged. Besides, it is in .no case proper to resort to the writ of habeas corpus, or to a succession of such writs, from day to day, for the purpose of reviewing the interlocutory decisions of the commissioner upon questions of that nature.

To the suggestion, that the commissioner had, when the writ was in this case applied for, granted an adjournment to enable the counsel for the foreign government to produce testimony, and that the commissioner was thus unjustly and unreasonably protracting the investigation, when, in fact, up to that time, there had, as claimed, been no legal evidence produced, I must say, that the conduct of the inquiry is committed to a sworn public officer, and his power to grant adjournments, at the instance of either party, is unquestionable. Often, it is indispensable to a just inquiry, and may often be necessary for the protection of the accused from an unfounded charge. The commissioner must exercise a just and reasonable discretion on that subject. The ends of justice, on the one hand, and the rights of the accused, on the other, cannot otherwise be preserved. Should that discretion be abused, the prisoner can, doubtless, have relief, but no such abuse at present appears. The practice in analogous cases, in the state wherein .the proceedings are conducted, is said, in one of the cases referred to, to be a guide to the commissioner in the conduct of the investigation. If this be so, then it is quite pertinent to refer to a familiar practice, sanctioned by the courts of this state, where persons charged as fugitives from justice are sought to be returned to another state. Not only is the arrest made, and the accused held for examination, and time allowed for the purpose, but they are even held for a reasonable time, to enable the complaining parties to procure the necessary requisition for their delivery to the executive of the state from which they have fled; and the practice is also familiar, where persons are charged with crime within the state jurisdiction, and the examination is pending, to adjourn the same from time to time, and, when such persons have been brought up on habeas corpus, they have been remanded, to the end that such examination may be continued to a conclusion. It will, also, be found, .that the practice of granting reasonable adjournments has obtained heretofore in all extradition cases; and there is no reason, either of favor to the prisoner, jealousy of the foreign government, or otherwise, why it should not prevail in those cases as well as in cases of crime alleged to have been committed in violation of our own laws.

What I have said seems to me to embrace, either expressly or by implication, all the grounds upon which the discharge of the prisoner is claimed, and I cannot regard them as sufficient. Let the prisoner be remanded to the custody of the marshal, ·to be held under the warrant of arrest and the commitments of the commissioner, that the proceedings on the inquiry into the criminality of the prisoner may be continued, and let the writs of habeas corpus and certiorari be discharged.

[NOTE. The case was heard by the commissioner on April 24. 1873. and the prisoner discharged for insufficiency of evidence, but he was held by the marshal upon a second warrant of arrest, issued upon a new executive mandate, which had been issued in the meanwhile. Upon this new warrant he was committed, and subsequently a warrant for his surrender to the agents of the British government issued. Thereupon the prisoner sued out a new writ of habeas corpus, which was heard in this court upon June 3, 1873; and the prisoner again remanded. Case No. 8,772.]