### CASTRO *v.* DE URIARTE.

*(District Court, S. D. New York.   March 30, 1883.)*

1. EXTRADITION—WARRANT OF ARREST—DESCRIPTION OF OFFENSE.
    In a warrant of arrest in extradition proceedings the offense or accusation need be described in general terms only, such as are used in the statute or treaty.
2. SAME—PRELIMINARY MANDATE.
    A preliminary mandate from the executive is not essential to jurisdiction in such proceedings, unless made obligatory by the treaty.
3. SAME—INTER-SPANISH TREATY.
    In the convention with Spain, the provision that it shall be *competent* for the demanding government to obtain a mandate or preliminary warrant, is permissive only, and not obligatory; the demanding government may, at its option, proceed, under section 5270 of the Revised Statutes, without a preliminary mandate, or may demand it under the provisions of the treaty.
4. TREATY—CONSTRUCTION.
    The construction of treaties adopted by the executive department should be followed when not repugnant to the language or purpose of the treaty.

5. MALICIOUS PROSECUTION—ESSENTIAL ELEMENTS OF OFFENSE.

In an action for malicious prosecution both malice and the want of probable cause must co-exist to render the defendant liable.

6. SAME—VERDICT.

Where there is no dispute as to the facts, nor any reasonable doubt concerning the inferences to be drawn from them in respect to want of malice and the want of probable cause, it is the duty of the court to direct a verdict for the defendant.

7. SAME—PROBABLE CAUSE.

The defendant, the consul general of Spain, was ordered by telegram, from Havana, to procure the extradition of the plaintiff for forgery, the accused having just arrived from Havana, and it being feared he would depart for Canada. *Held*, that the only reasonable and probable inference concerning the date of the forgery was that it was since the treaty of 1877; and it being conceded that there was no express malice, *held*, that the consul had probable cause for assigning the date of the forgery as within the treaty period, and that the verdict was, therefore, rightly directed in his favor.

At Law.

*Carpenter & Mosher*, for plaintiff.

*Sidney Webster*, for defendant.

BROWN, J. This is a motion for a new trial, made by the plaintiff, for alleged error of the court in directing a verdict for the defendant. The action was brought against the defendant, the consul general of Spain, for false imprisonment and malicious prosecution in extradition proceedings, upon the complaint of the defendant, in which the plaintiff was arrested and brought before a commissioner on October 2, 1881, and subsequently discharged for the reason that the offense of forgery for which he was arrested, was committed, as it subsequently appeared, before the ratification of the treaty with Spain. 12 FED. REP. 250.

Upon the trial there was no substantial dispute in regard to the facts. The plaintiff was a stranger to the defendant, and the action of the latter was wholly in an official capacity, and under orders from his government. The facts clearly negative any express malice. The plaintiff himself, in his testimony, stated that he did not believe there was any malice on the part of the defendant.

The court ruled (1) that the warrant was sufficient on its face to authorize the arrest of the accused; (2) that, upon the undisputed facts, the defendant had probable cause for the proceedings, and was not chargeable with malice, and, on that ground, directed a verdict. Exceptions were duly taken to both of these rulings, upon which the motion for a new trial is now made.

1. It is contended that the warrant under which the plaintiff was arrested was void, because it did not show "what act or instrument the plaintiff was charged with forging or falsifying." Article 2 of

the convention with Spain, January 5, 1877, provides that "persons shall be delivered up who shall have been charged with or convicted of any of the following crimes:" "Subdivision 9, forgery or the utterance of forged papers;" subdivision 10, "the forgery or falsification of the official acts of the government or public authority, including courts of justice, or the uttering or fraudulent use of any of the same." The warrant in this case recited that the plaintiff had been charged "with having, in the kingdom of Spain and in its jurisdiction, to-wit, at Havana, Island of Cuba, on or about the twenty-fifth day of September, 1881, committed the crime of forgery by forging an official document, or falsification of the official acts of the government of Spain, or public authority."

In the *Case of Macdonnell*, 11 Blatchf. 79, 88, the circuit judge says:

" The description of the offense might, in my opinion, for all purposes of insertion in the warrant of arrest, have followed the words of the treaty. * * * This is all that is essential to jurisdiction of the subject-matter. It is not necessary that the particulars required to be proved in order to establish the offense mentioned in the treaty should be specified in the warrant. * * * The warrant, reciting other jurisdictional facts, declares that on complaint to the officer 'forgery' is charged, etc. If there were no other detail or specification, I should hold that, for all the purposes of the warrant of arrest, this was sufficient."

At common law it was not necessary to recite the accusation in the warrant. Under the Revised Statutes of New York, vol. 2, p. *706, § 3, and Code Crim. Proc. §§ 151, 152, the warrant must state the accusation, offense, or crime; but it is sufficient to state it by its statutory designation without further particulars. *Payne* v. *Barnes*, 5 Barb. 465; *Atchinson* v. *Spencer*, 9 Wend. 62; *People* v. *Donohue*, 84 N. Y. 438. The description of the offense in this warrant conforms to the requirements of the treaty and to the practice in the state of New York, and such a warrant cannot, upon the above authorities, be held void upon its face. See, to the same effect, the very interesting, late *Case of Terraz*, 4 Exch. Div. 63.

2. It is further contended that the warrant of arrest was void both because no preliminary mandate had been obtained from the executive authorizing the extradition proceedings, and because the warrant did not set forth any such preliminary mandate.

In the *Case of Farez*, 7 Blatchf. 34, 46, it is said that where such a preliminary mandate "is made a prerequisite by the treaty," it should be set forth upon the face of the warrant. In my opinion this treaty does not make such a warrant a prerequisite.

In the earlier cases in this district it was held, following the opinion of NELSON, J., in *Ex parte Kaine*, 3 Blatchf. 1, that a preliminary mandate from the executive was in all cases necessary to authorize a commissioner to entertain the proceedings, whether the treaty contained any reference to such a preliminary mandate or not. This was questioned by WOODRUFF, C. J., in the *Case of Macdonnell*, 11 Blatchf. 79, 83; and in the *Case of Hermann Thomas*, 12 Blatchf. 370, 379, the circuit and district judges in this district concurred that no such preliminary mandate was necessary, "except where made so by the treaty." In that case the proceedings were instituted under the treaty with Bavaria, which, like the treaty with Great Britain, makes no allusion to any preliminary mandate of the executive. See, also, *In re Kelley*, 2 Low. 339.

Article 11 of the convention with Spain declares that "requisitions for the surrender of fugitives from justice shall be made by the respective diplomatic agents of the' contracting parties," or, in their absence, by its "superior consular officers." It next provides, that—

"It shall be *competent* for such representatives or such superior consular officers to ask and obtain a mandate or preliminary warrant of arrest for the person whose surrender is sought, *whereupon* the judges and magistrates of the two governments shall, respectively, have power and authority, upon complaint made under oath, to issue a warrant for the apprehension of the person charged, in order that he or she may be brought before such judge or magistrate, that the evidence of criminality may be heard and considered; and if, on such hearing, the evidence be deemed sufficient to sustain the charge, it shall be the duty of the examining judge or magistrate to certify the same to the proper executive authority, that a warrant may issue for the surrender of the fugitive."

The "requisition for surrender" above provided for is manifestly the application for the final warrant for the surrender of the fugitive, which can only be executed by the executive authority, after the judicial examination. That requisition is wholly different from the "mandate or preliminary warrant of arrest," which it is also "competent to ask, and obtain," at the outset; 'and while it is thus competent to ask for such a preliminary warrant, the language of this section of the treaty is plainly permissive, and not necessarily obligatory, if other means are provided by law for obtaining a judicial investigation, preliminary to final surrender. Such means are plainly provided by section 5270 of the Revised Statutes, embodying the act of August 12, 1848, (9 St. at Large, 302.) This section provides that—

" Whenever there is a treaty or convention for extradition," etc., " any justice, commissioner," etc., " may, upon complaint made under oath, charging any person found within the limits of any state, district, or territory with

having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice or commissioner, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge  *  *  *  he shall certify the same to the secretary of state, that a warrant may issue upon the requisition of the proper authorities of such foreign government for the surrender of such person, according to the stipulations of the treaty or convention, and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made."

The treaty with Spain was made on January 5, 1877, subsequent to the Revised Statutes; but section 5270 is evidently intended to apply to treaties that might thereafter be made, as well as to treaties then existing. It was so held in the *Case of Van Hoven*, 4 Dill. 411, 414; and the act of August 12, 1848, which was substantially the same as section 5270, expressly declared that these provisions are to be applied "in all cases in which there now exists, or hereafter may exist, any treaty or convention for extradition."

Treaties duly ratified under the constitution (article 6) are doubtless a part of the supreme law of the land, and their stipulations and obligations will not be deemed annulled by acts of mere general legislation which can be reasonably construed otherwise. *The Cherokee Tobacco*, 11 Wall. 616, 623; *Taylor* v. *Morton*, 2 Curt. 454; *Ropes* v. *Clinch*, 8 Blatchf. 304, 309. But the mere fact that a treaty provides a mode of carrying out its provisions, in the absence of legislation, cannot make it incompetent for congress to pass laws in aid of the treaty, and, in order to facilitate the extradition of criminals, to dispense with a part of those preliminaries which otherwise it might be necessary for the foreign government to resort to. The procedure indicated by section 5270, above quoted, is in substance identical with that contemplated by the treaty with Spain, except that it dispenses with any preliminary executive warrant. Had there been no law of congress upon the subject, such an executive warrant would have been necessary in order to authorize the magistrates to proceed; but, inasmuch as the law of this country expressly authorizes the magistrates to proceed, "whenever there is a treaty or convention for extradition," without reference to any preliminary executive warrant, such a warrant seems to me clearly unnecessary, if the demanding government chooses to avail itself of the law existing outside of the treaty, and proceed without the preliminary mandate

This construction of the treaty has been adopted by the executive department. In an official letter from Mr. Frelinghuysen, secretary of state, to the Spanish minister, bearing date May 23, 1882, after referring to section 5270, Rev. St., above quoted, it is said:

"This provision of the statutes of the United States is deemed by this government to be in aid of the provisions of the convention; and the provisions of article 11 of the convention are held to be directory only. Under these circumstances the warrant of authorization from the secretary of state is not considered as indispensable. It may often happen that an instant arrest is expedient in order to secure the accused fugitive for examination into his criminality; and in such emergencies the delay incident to procuring the warrant of authorization from this department might defeat the purposes of justice. The personal rights, moreover, of the accused are secured by the provisions of the convention, no less than by those of the statute, inasmuch as he can only be surrendered on satisfactory evidence of his criminality."

While the construction which may be placed by the executive department upon laws or treaties is not necessarily binding upon the judiciary, yet where its construction is not repugnant either to their letter or obvious intent, and, as in this case, is sustained by such manifest considerations of convenience and expediency, it should be adopted without hesitation. This construction is not repugnant to the language of this treaty. The preliminary warrant is permissive only. It is not made obligatory. It is not, in the language of this court in the *Case of Farez*, "made a prerequisite by the treaty." Congress might have provided by law, in the absence of any treaty, for an examination of offenders charged with committing crimes in foreign countries, and for their surrender if satisfactory evidence of guilt appeared. A person arrested under such a law could not be heard to complain that there was no treaty requiring his surrender, or, if the statute were followed, that his arrest was illegal. Congress has, in fact, provided that "whenever there is a treaty or convention for extradition," certain proceedings may be had. And this law is without regard to the particular provisions of the various treaties, and requires no previous executive mandate. The proceeding in this case was in strict accordance with this law of congress; and a proceeding which in all respects follows that law and all its conditions cannot be void so as to serve as the basis of an action for false imprisonment. Nor can it be said that this construction would make wholly useless the terms of a treaty allowing an application for a preliminary mandate. In the first place there may be no general law of Spain providing for any course of procedure outside of the treaty stipulations; and as this convention relates to both countries alike,

it may have been necessary then, and may be still, in all cases of applications by our government for the surrender of criminals by Spain, to obtain such a preliminary warrant, in order to authorize the magistrates of that country to proceed with a judicial investigation. Or, again, cases may arise of such a political character that it may be expedient and desirable that the demanding government, upon presentation of the facts, should obtain from the executive an immediate consideration and decision of the question involved in the ·surrender claimed, without the delay or publicity incident to a previous judicial examination; and in such a case it is still at the option of the demanding government to require a preliminary warrant and thus obtain the ruling of the executive at once.

In effect, under our law, two proceedings are available to the demanding government;—one, according to the provisions of the treaty alone; and the other under the Revised Statutes as well; and so long as the provisions of neither are repugnant to the other, as in this case they are not, it is at the option of the demanding government to pursue either. But even if it were held that to authorize the final surrender of the accused all the provisions of the treaty should be literally followed, I do not see how, in an action for false imprisonment, the proceeding on the warrant of arrest can be held void, when it is expressly authorized by a valid law of congress, and exactly follows the provisions of the statute. This objection, therefore, should be overruled.

3. It is further urged that the court erred in not submitting to the jury the question of probable cause, on the part of the defendant, in instituting the proceedings before the commissioner.

On the twenty-ninth of September the defendant, as consul general, received from the Spanish minister an order to procure the arrest of the plaintiff in extradition proceedings, who, it appeared from the telegram from Havana on that day, had sailed from Cuba for New York on the 27th. The consul thereupon applied to the commissioner, and was told that more definite and specific charges were necessary. Being directed by the Spanish minister to communicate directly with the captain general of Cuba, the defendant telegraphed for the particulars of the offense.

On the second of October the defendant received in reply a further telegram, stating that the crime of Castro was obtaining moneys under false pretense, deceit, imposition, and falsification of public documents. In the meantime Castro had arrived, had been traced to Sixteenth street in this city, and it was feared would depart to

Canada. The information by telegram was sufficient, except in fixing the date of the offense.

The treaty provided that it should not apply to any offense committed before its date, that is, 1877. In this exigency, the defendant, being informed by the commissioner that the precise date of the offense was immaterial, provided that it were within the period of the treaty, it was considered under the telegram for extradition that the offense was undoubtedly committed within the treaty period, and probably about the time of his escape; and the complaint was accordingly written out upon information and belief, stating that the time of the offense was on or about September 25, 1881.

Upon the warrant issued upon this complaint the plaintiff was arrested and brought before the commissioner the following morning, allowed to go on his own parol upon his statement that the offense alleged was prior to the treaty, and this being verified by telegrams in answer to further inquiries, he was upon the following day discharged.

Upon these facts there was no dispute, nor was it claimed that the consul general was actuated by any motives other than the proper performance of an official duty, under the orders received, to procure the extradition of the plaintiff. It appeared upon the trial that the plaintiff had been recently indicted upon this charge of forgery, which had only been discovered in 1880; that he had given bail for his appearance before the proper magistrate in Havana, which he had forfeited by his departure to this country. Under the orders which the consul general had received from the Spanish minister, it was his duty, under heavy penalties to his own government, to act with diligence.

The only questions on this branch of the case were whether the defendant was legally chargeable with malice, and whether, under the circumstances, he had probable cause for charging the offense within the treaty period. To sustain the count for malicious prosecution, both malice and the want of probable cause must co-exist. It seemed to me at the trial, and it seems to me still, that under the undisputed facts there is but one possible answer to both questions, and that is that there was no malice, and that the defendant was warranted in assuming, and was bound to assume, under the circumstances, where immediate action on his part was demanded, that the offense for which he was required to procure extradition was committed within the period of the treaty; that under such instructions and such telegrams, not only was this probable, but the contrary was

highly improbable; and that had he suffered the accused to escape through a failure to proceed upon the possible but improbable contingency that the date of the offense was prior to the treaty, he would have been justly subject to the charge of negligence of official duty had the crime been committed within the treaty period. As that was the only reasonable inference under the circumstances, the complaint was not without probable cause, as it was also without malice.

In the case of *Stewart* v. *Sonneborn,* 98 U. S. 187, the court quote with approval the language used in *Sutton* v. *Johnstone,* 1 Term R. 493: "The question of probable cause is a mixed question of law and of fact. Whether the circumstances alleged to show it probable are true, and existed, is a matter of fact; but whether, supposing them to be true, they amount to a probable cause, is a question of law." And, say the court: "This is the doctrine generally adopted. It is therefore, generally, the duty of the court, when evidence has been given to prove or disprove the existence of probable cause, to submit to the jury its credibility, and what facts it proves, with instructions that the facts found amount to proof of probable cause, or that they do not." See, also, *Heyne* v. *Blair,* 62 N. Y. 19.

On this branch of the case there were no facts in dispute, nor, as it seems to me, any rational doubt in regard to the inference to be drawn from them, namely, that there was no malice nor want of probable cause in the proceeding of the defendant; and it was, therefore, the duty of the court to direct a verdict in his favor. *Commissioners* v. *Clark,* 94 U. S. 278, 284.

The motion for a new trial should be denied, with costs.