---

Ex parte REED.

(District Court, D. New Jersey. January 20, 1908.)

HABEAS CORPUS—EXTRADITION—MEXICAN TREATY—DETENTION OF PRISONER TO AWAIT DOCUMENTS.

Under the treaty of February 22, 1899, 31 Stat. p. 1825, between Mexico and the United States, providing that on proper notification through the diplomatic channel either country shall cause the arrest of any alleged fugitive criminal from the other, and "keep him in safe custody for such time as may be practicable, not exceeding forty days, to await the production of the documents upon which the claim for extradition is founded," the prescribed 40 days is the limit of time during which a prisoner so arrested may be detained, unless the documents have been produced.

Habeas Corpus.

John C. Coleman, for petitioner.

John B. Vreeland, U. S. Dist. Atty., for the United States of America.

S. Mallet-Prevost, for the United States of Mexico.

LANNING, District Judge. Upon the return of the writ of habeas corpus allowed in this matter, it appears that on April 16, 1906, United States Commissioner Rowe issued his warrant for the provisional arrest of George Deering Reed, upon a complaint that Reed had embezzled certain moneys of his employer in the state of Oaxaca, Mexico. On November 30, 1907, Reed was arrested and taken into the custody of the United States Marshal; and on December 2, 1907, he was committed to the jail of Hudson county for safe custody until a hearing should be had. He is still there, and now applies to be discharged on the ground that his detention beyond the period of 40 days from the time of his arrest is contrary to the provisions of the tenth article of the treaty of February 22, 1899, 31 Stat. p. 1825, between the United States of America and the United States of Mexico. That article is as follows:

"On being informed by telegraph or otherwise, through the diplomatic channel, that a warrant has been issued by competent authority for the arrest of a fugitive criminal charged with any of the crimes enumerated in the foregoing articles of this treaty, and on being assured from the same source that a requisition for the surrender of such criminal is about to be made accompanied by such warrant and duly authenticated depositions or copies thereof in support of the charge, each government shall endeavor to procure the provisional arrest of such criminal and to keep him in safe custody for such time as may be practicable, not exceeding forty days, to await the production of the documents upon which the claim for extradition is founded."

In extradition cases, one of the rules of practice observed in this country is that, in the absence of a conventional or legislative provision, there is no authority vested in any department of the government to seize a fugitive criminal and deliver him to a foreign power. 1 Moore on Extradition, § 16; 4 Moore's Internat. Law Dig. pp. 251, 252, 253. In 1901, the Department of State held that the extradition of a fugitive, on a charge of "robbery without violence," cannot be granted under our present treaty with Mexico, for the reason that no such offense is included in the treaty. 4 Moore's Internat. Law Dig. 275. Where no time for holding an alleged fugitive under provisional arrest is prescribed by treaty, the Commissioner may exercise a reasonable discretion in the matter of adjourning the hearing and requiring the prisoner to be held in custody. In re MacDonnell, 11 Blatchf. 79, Fed. Cas. No. 8,771; In re Ludwig (C. C.) 32 Fed. 774. Some of our treaties with foreign governments contain express provisions that a fugitive shall not be held under provisional arrest longer than a designated time, and that after that time has expired, if proper proofs to support the complaint have not been produced, the prisoner shall be released. Such provisions are found in our treaties with Argentine Republic (1896), Bolivia (1900), Chile (1900), and Denmark (1902).

The petitioner in the present case was arrested on November 30,

1907. His petition for a writ of habeas corpus was sworn to on January 11, 1908, being 42 days after his provisional arrest. It is admitted that the documents upon which the claim for extradition is founded have not yet been produced before the Commissioner. Counsel for the United States of Mexico contends that the effect of the 40-day limitation, in the last clause of the tenth article of the treaty, is simply to relieve the authorities of our government from the obligation to aid the Mexican authorities after the expiration of 40 days from the date of the provisional arrest. So reading the article, the argument is that the treaty does not belong to that class of treaties which give to a prisoner a right to his discharge if certain documents or proofs are not produced against him within a prescribed period, but to that class in which no time for the detention of a prisoner under provisional arrest is prescribed, and in which the Commissioner has a discretionary power to prolong the detention for a reasonable period. But it does not seem to me that the construction thus contended for is a reasonable one. The fugitive is to be kept in safe custody "to await the production of the documents upon which the claim for extradition is founded." There is no intimation that he may be held "to await" their production after the 40 days are expired. Indeed, the language used excludes such an idea. The reasonable construction is that if the documents on which the claim for extradition in a given case is founded are produced within 40 days after the provisional arrest, and the proofs are in proper form, the fugitive may be committed for extradition; and that if they are not produced within that period the case shall no longer be regarded as one within the provisions of the treaty. If the documents are not produced within the 40 days, there is no authority for detaining the fugitive longer "to await" their production. I think the principle to be applied in this case is the same one that was applied by Judge Lacombe in the Dawson Case (C. C.) 101 Fed. 253. In that case, Dawson was placed under provisional arrest, waived examination, and consented to be sent back to South Africa to meet the charges there pending against him. He was accordingly committed for extradition. Having remained in jail for more than two months without demand for his delivery on any requisition, he was discharged under the authority of section 5273, Rev. St. [U. S. Comp. St. 1901, p. 3596], which provides for such discharge if there be no delivery upon a requisition within two calendar months after commitment for extradition.

In the present case, no satisfactory reason is given for the delay in securing the necessary documents from Mexico. The warrant on which Reed was arrested was issued more than 18 months before the arrest. The necessary documents should have been here long before the arrest, and ready for production before the Commissioner immediately after the arrest. Assuming, for the purpose of the argument, that the construction given to the treaty by the counsel for the Mexican government is the true one, the question arises whether, in the circumstances of this case, a delay in producing the necessary documents for more than 40 days after the date of the provisional arrest is not so unreasonable as of itself to entitle Reed to his discharge. That question, however, it is not necessary to decide. Construing the treaty as I do, I find that the Commissioner, by reason of the 40-day limitation

in the treaty, is now without authority to proceed further in the case. His jurisdiction is ended by lapse of time.

The petitioner must therefore be discharged.

NOTE.—Between the date of filing the above opinion and the date of signing an order discharging the prisoner, the documents upon which the claim for extradition was founded arrived from Mexico. Immediately upon signing the order of discharge a new complaint was presented to the United States district judge, upon which a new warrant of arrest was issued returnable before the judge. Under this warrant the prisoner was rearrested, a hearing had, a motion to dismiss the proceedings refused, and the prisoner committed for extradition. Thereafter the proceedings were certified to the Secretary of State, pursuant to the provisions of section 5270 of the Revised Statutes, and the prisoner was surrendered to the Mexican authorities.