VOLOSHIN et al. v. RIDENOUR, U. S. Marshal (three cases).

(Circuit Court of Appeals, Fifth Circuit. May 8, 1924.)

Nos. 4228, 4240, 4263.

1. **Habeas corpus** ⊜⇒113(8)—**Power of court to act in extradition proceeding not terminated or suspended by appeal in habeas corpus proceeding.**

Appeal from order in habeas corpus proceeding remanding prisoner to custody of marshal under warrant issued in extradition proceedings, without execution of bond operating to stay extradition proceedings, did not terminate or suspend the court's power or jurisdiction to act in an extradition proceeding pending when appeal was taken.

2. **Habeas corpus** ⊜⇒113(12)—**Appeals involving moot questions not considered.**

Appeals from orders in habeas corpus proceedings remanding petitioners to custody of marshal under warrants issued in extradition proceedings will not be considered by the Circuit Court of Appeals, where sole cause of detention is warrant issued pursuant to order subsequently made in other extradition proceedings, since in such case the questions raised by the appeals had become moot.

3. **Extradition** ⊜⇒15—**Discharge of prisoners, held without formal requisition for surrender accompanied by evidence of criminality, does not deprive court of power to order detention in same or another proceeding.**

Under article 4 of the extradition treaty between Chile and the United States, the discharge of prisoners held for two months, without formal requisition for surrender accompanied by evidence of criminality, did not deprive court of jurisdiction to order their detention in the same or another proceeding instituted pursuant to request for extradition based on substantially the same criminal charge, since such treaty does not prohibit the issuance in one proceeding of more than one order or warrant for the provisional arrest or detention of the fugitive, or the institution of successive extradition proceedings founded on the same criminal charge.

4. **Extradition** ⊜⇒14(2)—**Depositions and documents held sufficiently authenticated.**

Certificate by principal diplomatic or consular officer of the United States, resident in foreign country, in absence of the United States ambassador to such country, *held* to sufficiently authenticate depositions and documents to entitle them to be considered in extradiction proceedings, under Rev. St. § 5271 (Comp. St. § 10111).

5. **Extradition** ⊜⇒12—**Failure to produce copy of warrant of arrest in other country held not to invalidate order.**

Failure to produce in extradition proceedings duly authenticated copy of warrant of arrest in other country, under article 3 of the extradition treaty between Chile and the United States, *held* not to invalidate the order, in view of Rev. St. § 5270 (Comp. St. § 10110), providing for extradition proceedings without such requirement.

6. **Habeas corpus** ⊜⇒113(12)—**Admission of parol testimony in habeas corpus proceedings involving validity of order rendered in extradition proceeding held harmless.**

In habeas corpus proceedings by prisoners arrested under warrant issued in extradition proceedings, admission of oral testimony as to an admission by prisoners that they were in the foreign country at the time of the commission of the crime charged, where cumulative and corroborative of the uncontradicted testimony contained in depositions, *held* harmless.

Appeals from the District Court of the United States for the Canal Zone; John D. Wallingford, Judge.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Three separate habeas corpus proceedings by Gabriel Constantine Voloshin and Eugenia C. Bolshago against Horace D. Ridenour, United States Marshal for the Canal Zone. From orders discharging writs and remanding petitioners to the custody of the marshal in each of the three proceedings, the petitioners appeal. Appeals from the two orders first made dismissed, and order in third proceeding affirmed.

L. S. Carrington, of Ancon, Canal Zone, Harmodio Arias, of Panama City, Republic of Panama, J. Zach Spearing, of New Orleans, La., and William C. Todd, of Cristobal, Canal Zone, for appellants.

G. H. Martin, U. S. Atty., of Ancon, Canal Zone, and J. J. McGuigan, Asst. U. S. Atty., of Balboa Heights, Canal Zone, for appellee.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. These three cases were submitted together. Each of them is an appeal from an order discharging a writ of habeas corpus sued out by the appellants and remanding them to the custody of the appellee, the marshal for the Canal Zone. The appellee's custody of the appellants began with their arrest on May 28, 1923, under a warrant issued in extradition proceedings instituted against them in the Canal Zone in behalf of the republic of Chile, an affidavit in which alleged the issuance of a warrant in Los Andes, Chile, for the arrest of appellants on charges of robbery and homicide committed there. The appellants were discharged from custody under that warrant after they had been held thereunder for a period of two months. Immediately following such discharge, and on the same day, they were rearrested by the appellee under another warrant issued upon a second extradition complaint, an affidavit in which was similar to the above-mentioned one. Thereupon the first of the three habeas corpus proceedings was instituted, which resulted as above stated. The appellants were detained under the second warrant until September 28, 1923, when they were brought into court and a second time discharged.

On the same day they were rearrested under a third extradition complaint, made in behalf of the same republic. That complaint, which was signed and sworn to by Carlos Edwards, Chilean chargé d'affaires and consul general to the republic of Panama and Chilean consul to the United States in the Canal Zone, alleged the issuance on or about April 21, 1923, of warrants in the republic of Chile for the arrest of the appellants on a charge of murdering Joseph Lipshic at Los Andes, Chile, on or about April 21, 1923. Thereupon the second of the habeas corpus proceedings was instituted, which resulted as above stated. On October 29, 1923, a hearing was had in the extradition proceeding instituted by the filing of the last-mentioned complaint. That hearing resulted in the court adjudging, on October 29, 1923, that the crime of the murder of Joseph Lipshic was committed at Los Andes, in the republic of Chile, on or about the 21st day of April, 1923, that there is reasonable, probable, and good cause for believing that the appellants are guilty of said crime, and that they be committed to the custody of the appellee, there to remain pending action in the premises by the

Secretary of State of the United States. Following the making of that order the third habeas corpus proceeding was instituted, and resulted as above stated. The appellee's return to the writ of habeas corpus issued in that proceeding stated that he took the appellants into custody under and by virtue of the commitment warrant issued in pursuance of the above mentioned order of October 29, 1923, and that he "still has them in his custody solely by virtue of said warrant of commitment, and not otherwise."

It was made to appear that the discharge of the appellants from custody under the warrant issued in the first instituted extradition proceeding was occasioned by the facts that the first requisition for their surrender was addressed by the Chilean authorities to the republic of Panama, instead of to the United States, and that the required evidence of their criminality was not produced within the time, two months, fixed by article 4 of the extradition treaty between Chile and the United States (32 Stat. 1850) as the limit of the period of detention under a provisional arrest in extradition proceedings. It was also made to appear that at the time of the discharge of the appellants from custody under the warrant issued in the second extradition proceeding, and of the institution of the third extradition proceeding, a requisition for the surrender of the appellants, and accompanying formal documents in support thereof, had been sent from Chile to the Chilean Embassy at Washington on September 6, 1923, and that as soon as such papers had been received and examined by the Department of State they would be forwarded for presentation to the District Court of the Canal Zone. That requisition and the documents accompanying it were before the court at the hearing in the third extradition proceeding.

[1] None of the appeals from the several orders made in the habeas corpus proceedings had the effect of terminating or suspending the court's power or jurisdiction to act in an extradition proceeding which was pending when such appeal was taken. The action of the court in remanding the appellants to the custody of the appellee upon the discharge of each of the habeas corpus writs was in pursuance of the provisions of rule 33 of this court. No order staying the proceedings under which the appellants were detained was made or applied for. The appeals were allowed upon the appellants giving cost bonds, which did not purport to have the effect of superseding or staying anything. Such appeals did not operate to stay the extradition proceedings. Ex parte Green (D. C.) 165 Fed. 557; 29 Corpus Juris, 190.

[2] The detention of the appellants under any warrant or action of the court in the first and second extradition proceedings has ceased. The above set out part of the appellee's return to the writ issued in the last-instituted habeas corpus proceeding was not traversed or impeached in any way. That return explicitly shows that the detention of the appellants which was brought into question by the appeal last sued out is solely by virtue of the warrant issued in pursuance of the order made on October 29, 1923, in the third extradition proceeding. The questions raised by the two appeals which were first and second in order of time have become moot, as the detention of the appellants which was the subject of complaint in those cases has ceased. This court will not

inquire into the propriety of rulings made in a habeas corpus proceeding instituted for the sole purpose of impeaching the rightfulness or legality of a detention of the appellants on a disclosed ground which no longer exists; the sole cause of their detention at this time being a subsequently made order and process issued in pursuance thereof. The detention of the appellants which is complained of in the case which was brought to this court by the last sued out appeal being the only one which is now in existence and subject to be complained of by the appellants, and the questions raised in the cases brought here by the other two appeals having become purely moot, the appeals in those cases, numbered in this court 4228 and 4240, respectively, will be dismissed.

[3] It is contended that the discharge of the appellants from custody on July 28, 1923, after they had been held for two months under the provisional detention warrant issued in the extradition proceeding instituted in May, 1923, without a formal requisition for their surrender, accompanied by the necessary evidence of their criminality, being produced, had the effect of depriving the court of power or jurisdiction to order the detention of the appellants in the same or another proceeding instituted in pursuance of a request for extradition based upon substantially the same criminal charge which was disclosed in the original extradition proceeding against them. This contention is based upon the following provision of article 4 of the above-mentioned treaty:

"The provisional detention of a fugitive shall cease and the prisoner be released if a formal requisition for his surrender, accompanied by the necessary evidence of his criminality has not been produced under the stipulations of this treaty, within two months from the date of his provisional arrest or detention."

The language of that provision indicates that the sole purpose of it was to prescribe the length or period of time a provisional arrest or detention should be effective, in the absence of the production of a formal requisition for the surrender of the fugitive, accompanied by the necessary evidence of his criminality. It does not purport to forbid the issuance in one proceeding of more than one order or warrant for the provisional arrest or detention of the fugitive, or the institution of successive extradition proceedings founded upon the same criminal charge.

In this connection the counsel for the appellants rely on the decision in the case of Ex parte Reed (D. C.) 158 Fed. 891. Reed was detained under a warrant for his provisional arrest and detention issued in a proceeding seeking his commitment for extradition to Mexico. Our extradition treaty with Mexico contains a provision similar to the above quoted one. Reed's application for a discharge was made after the expiration of the time for which, under the terms of the treaty, the provisional warrant of arrest was effective. The action of the court in discharging him was in line with that which was twice taken by the court below. That the opinion rendered in that case was not intended to have the meaning now attributed to it in behalf of the appellants is persuasively indicated by the following footnote which was made a part of the report of that case:

"Note.—Between the date of filing the above opinion and the date of signing an order discharging the prisoner, the documents upon which the claim for extradition was founded arrived from Mexico. Immediately upon signing the order of discharge a new complaint was presented to the United States District Judge, upon which a new warrant of arrest was issued returnable before the judge. Under this warrant the prisoner was rearrested, a hearing had, a motion to dismiss the proceedings refused, and the prisoner committed for extradition. Thereafter the proceedings were certified to the Secretary of State, pursuant to the provisions of section 5270 of the Revised Statutes, and the prisoner was surrendered to the Mexican authorities."

The just-quoted statement shows that the court did in that case substantially the same thing which is complained of in this case. It is not doubted that the above-quoted treaty provision has the effect of limiting the time for which an accused person may legally be held under an order or warrant for his provisional arrest and detention in advance of a presentation of a formal requisition with accompanying required proof, and affords a means of preventing a prolongation of such detention in the absence of further action by a court or official having jurisdiction in extradition proceedings. But, to say the least, we are not of opinion that that provision is convincing evidence that the makers of the treaty intended to withhold from such a court or official the power to prolong such a detention beyond the time when the warrant under which the accused was first provisionally detained ceased to be effective. It is not to be supposed that the makers of the treaty were unmindful of the probability of the not infrequent happening of something to prevent a formal requisition for extradition being made and properly supported while the first issued writ for his detention provisionally is in force.

To give to the provision in question the meaning attributed to it in behalf of the appellants would involve the imputation to the framers of the treaty of a purpose to make the remedy given thereby frequently ineffective or unavailable by withholding power to hold the accused after the expiration of two months from the date of the commencement of his original detention provisionally, though an application for his detention was justifiable under the circumstances existing both during that period and after the expiration of it, and though there is no lack of good faith and reasonable diligence on the part of the officials of the demanding government in undertaking to do what is required to effect the extradition of the accused. The language of the provision in question by no means warrants the conclusion that the treaty makers had such a purpose. That language is consistent with the absence of an intention to deal with the question of a plurality of such warrants issued under orders in the same or another extradition proceeding. No provision of the treaty had the effect of forbidding the holding of the appellants, under successive and appropriate court orders, up to the time of the hearing which resulted in the order committing them for extradition. In the absence of such a provision in the applicable treaty successive provisional arrests and detentions are permissible, when they do not involve any abuse of the extradition remedy given, or more than one adjudication of the merits of the question of the asserted right to have the accused surrendered. Collins v. Loisel, 262

U. S. 426, 43 Sup. Ct. 618, 67 L. Ed. 1062; Ex parte Schorer (D. C.) 197 Fed. 67.

The evidence as to the causes of the delay in supporting the allegations of the complaints made against the appellants until the date of the hearing which resulted in the order under which they are held does not indicate any lack of good faith in the institution and prosecution of the proceedings, or any abuse or misuse of the applicable remedies. It may be inferred that the proper department or official in Chile was duly informed of the institution of the first extradition proceeding by the individual who was the chief Chilean diplomatic representative accredited to the republic of Panama and also the Chilean consul to the United States in the Canal Zone. It fairly may be supposed that the addressing of the first requisition for extradition to the republic of Panama, instead of to the government of the United States, was due to an honest mistake or misunderstanding as to the place of the arrest and detention of the appellants, the territories in the Isthmus of Panama of the republic of Panama and of the United States being contiguous, and such arrest and detention having been brought about as the result of action taken by one who was a representative of Chile accredited to both those countries. The delays incident to the correction of that mistake, to complying with requirements of the above-mentioned treaty, to the transmission of the required documents from the Chilean capital to Washington, to procuring action on them by our Department of State and the transmission of them from Washington to the Canal Zone, were not shown to be inconsistent with a proper prosecution of the extradition proceedings. It was not made to appear that the provisional detention of the appellants was unwarrantably protracted with the result of entitling them on that ground to be set at liberty, and thus to be afforded the opportunity of defeating the requested surrender by their flight.

[4] No question was raised as to the sufficiency of the affidavit or complaint which was the beginning of the last instituted extradition proceeding. It was contended that the depositions and other documents which were transmitted from Chile and received in evidence on the hearing which resulted in the order committing the appellants for extradition were not so authenticated as to entitle them to be considered. Attached to the documents mentioned was a certificate which was subscribed by John F. Martin, chargé d'affaires ad interim (who was shown to be the principal diplomatic or consular officer of the United States then resident in Chile), and certified:

"That the Honorable William Miller Collier, the duly accredited ambassador from the United States of America to the republic of Chile, is absent on leave and is now in the United States of America; that in his absence I am chargé d'affaires ad interim of the United States at Santiago, republic of Chile, duly accredited as such from the United States of America, and am the principal diplomatic agent of the United States of America resident in the republic of Chile at this time; that the attached papers regarding the extradition of Gabriel Voloshin Boduar and Eujenia Bolshago Smirnowa, duly certified by the authorities of the republic of Chile, are authenticated in such manner as would entitle them to be received in the tribunals of the republic of Chile for the purpose of showing the criminality of the above-named persons, from which country the said persons have escaped."

The following is the applicable statute:

"In every case of complaint, and of a hearing upon the return of the war-rant of arrest, copies of the depositions upon which an original warrant in any foreign country may have been granted, certified under the hand of the person issuing such warrant, and attested upon the oath of the party produc-ing them to be true copies of the original depositions, may be received in evi-dence of the criminality of the person so apprehended, if they are authen-ticated in such manner as would entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused par-ty escaped. The certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that any paper or other document so offered is authenticated in the manner required by this section." R. S. § 5271; U. S. Comp. Stat. § 10111.

The quoted certificate was made by an official designated by the statute, and literally complies with the requirement of the statute in reference to such a certificate. The sufficiency of the authentication to make the certified documents receivable in evidence on the hearing in the extradition proceedings does not seem to be even questionable. Grin v. Shine, 187 U. S. 181, 23 Sup. Ct. 98, 47 L. Ed. 130; Ex parte La Mantia (D. C.) 206 Fed. 330. We do not understand that it is claimed that those documents, which included depositions tending to prove the alleged murder of Joseph Lipshic by the appellants, and a finding by the Supreme Court of Chile of the existence of the crime and that the depositions indicate the guilt of appellants, did not, if they were admissible, constitute sufficient evidence to sustain the order made. Those documents included a showing to the effect that under the Chilean law depositions taken in the investigation of a criminal transaction, when the flight of the accused from Chile is disclosed, are referred to the tribunal mentioned for its determination as to the suffi-ciency of the evidence of the guilt of the fugitive to warrant the making of a request for his extradition.

[5] Another objection was that the documents produced at the hear-ing in the last-instituted extradition proceeding did not include a duly authenticated copy of the warrant of arrest in Chile. This objection is based upon a provision of article 3 of the above-mentioned treaty. The following is a copy of that provision:

"If the person whose extradition is requested shall have been convicted of a crime or offense, a duly authenticated copy of the sentence of the court in which he was convicted, or if the fugitive is merely charged with crime, a duly authenticated copy of the warrant of arrest in the country where the crime has been committed, and of the depositions or other evidence upon which such warrant was issued, shall be produced.

"The extradition of fugitives under the provisions of this treaty shall be carried out in the United States and in the republic of Chile, respectively, in conformity with the laws regulating extradition for the time being in force in the state on which the demand for surrender is made."

The objection might be meritorious if the validity of the order com-mitting the appellants was dependent upon a compliance with a pro-cedural provision of the applicable treaty. But such is not the case. Under our laws two proceedings are available to the demanding gov-ernment; one according to the provisions of the treaty alone, and the other under R. S. § 5270 (Comp. St. § 10110). Castro v. De Uriarte (D. C.) 16 Fed. 93; Charlton v. Kelly, 229 U. S. 447, 463, 33 Sup. Ct.

945, 57 L. Ed. 1274, 46 L. R. A. (N. S.) 397; Grin v. Shine, supra. The following is an extract from the opinion in the last-cited case:

"While the treaty contemplates the production of a copy of a warrant of arrest or other equivalent document, issued by a magistrate of the Russian Empire, it is within the power of Congress to dispense with this requirement, and we think it has done so by Rev. Stat. § 5270, hereinbefore cited. The treaty is undoubtedly obligatory upon both powers, and, if Congress should prescribe additional formalities than those required by the treaty, it might become the subject of complaint by the Russian government and of further negotiations. But notwithstanding such treaty, Congress has a perfect right to provide for the extradition of criminals in its own way, with or without a treaty to that effect, and to declare that foreign criminals shall be surrendered upon such proofs of criminality as it may judge sufficient. Castro v. De Uriarte, 16 Fed. Rep. 93. This appears to have been the object of section 5270, which is applicable to all foreign governments with which we have treaties of extradition. The requirements of that section, as already observed, are simply a complaint under oath, a warrant of arrest, evidence of criminality sufficient to sustain the charge under the provisions of the proper treaty or convention, a certificate by the magistrate of such evidence and his conclusions thereon, to the Secretary of State. As no mention is here made of a warrant of arrest, or other equivalent document, issued by a foreign magistrate, we do not see the necessity of its production. This is one of the requirements of the treaty which Congress has intentionally waived. Moore on Extradition, § 70."

We think that the just-quoted ruling, especially in view of the provision contained in the above set out concluding paragraph of article 3 of the treaty, adversely disposes of the objection under consideration. The extradition laws of the United States being in force in the Canal Zone by virtue of section 12 of the Panama Canal Act (37 Stat. 569 [Comp. St. §' 10047]), the remedy given by R. S. § 5270, was enforceable there; the surrender sought being of fugitives charged with a crime named in the above-mentioned treaty.

[6] An exception was reserved to the overruling of an objection by the appellants to the admission, on the hearing in the habeas corpus proceeding now under review, of evidence as to an admission by the appellants, after their arrest in the Canal Zone, that they were in Los Andes, Chile, on or about April 21, 1923, the date of the alleged commission of the crime charged. The ground of the objection was that oral testimony in connection with extradition proceedings was not admissible; the treaty providing that the asylum government shall hold the fugitives, and that the demanding government undertakes to forward the evidence in form of depositions. Evidence that the accused was in the territory of the demanding state at the time of the commission of the alleged crime is a proper part of a showing in support of a request for his extradition. The above-mentioned authenticated depositions accompanying the formal request for the surrender of the appellants contained testimony to that effect, and there was no conflict in the evidence on that subject. The evidence as a whole, including that which was admitted over the above-mentioned objection, raised no issue as to the identity of the appellants, or as to the fact of their presence at the time and place of the commission of the crime alleged. The testimony now in question was merely cumulative and corroborative of uncontradicted testimony contained in the depositions mentioned

This being so, the conclusion is warranted that the result could not properly have been different from what it was, if the testimony in question had been rejected or excluded. It follows that the question of its admissibility is not a material one, and that the action of the court in admitting it is not a ground for reversal, whether that action was or was not free from error.

The record in case No. 4263 shows no reversible error. The order appealed from in that case is affirmed. The appeals in cases Nos. 4228 and 4240 are dismissed.