In the Matter of the Extradition of CHAN KAM-SHU, a fugitive from the Justice of the Republic of Liberia.

UNITED STATES of America, Appellant,

v.

Chan KAM-SHU, Appellee.

No. 72-2476.

United States Court of Appeals, Fifth Circuit.

April 6, 1973.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Alan C. Todd, Asst. U. S. Atty., Orlando, Fla., Murray R. Stein, John L. Murphy, Chief, Administrative Regulations Sec., Crim. Div., Dept. of Justice, Washington, D.C., for appellant.

Emmett A. Moran, Orlando, Fla., court appointed, for appellee.

Before JONES, GODBOLD and IN-GRAHAM, Circuit Judges.

GODBOLD, Circuit Judge:

This appeal presents two issues in defining the scope and construing the terms of the extradition treaty between the United States and Liberia. First, whether petitioner, a member of the crew of a Liberian flag vessel, who was brought into the United States after allegedly murdering another crew member while the ship was in international waters, is a fugitive from justice within the scope of the Treaty. Second, whether Liberian authorities timely presented a formal requisition for surrender of the petitioner after he was provisionally arrested. The District Court concluded that Liberia had not timely presented the formal request and granted a writ of habeas corpus. We reverse.

On January 30, 1972, Chan Kam-Shu, a crew member aboard the vessel Silver Shelton, allegedly fatally stabbed another crew member.[1] The Silver Shelton was then approximately 22 miles off the Atlantic Coast of Florida. The vessel immediately requested assistance from the United States Coast Guard, which instructed the ship to proceed to the mouth of the harbor at Port Canaveral, Florida, approximately two miles offshore. A Coast Guard cutter rendez-

---

1. Chan was a resident of Hong Kong, British Crown Colonies, but his citizenship, British, Chinese, or otherwise, is not clear from the record. The British were notified of the incident, but no official British action appears in the record.

voused with the vessel at that location and carried the injured crewman to a hospital.

An FBI agent investigating the incident found the crewman dead at the hospital. At the invitation of the Silver Shelton's captain, the agent went aboard the vessel. He elicited statements from crew members and brought Chan ashore to the local jail. The agent testified that he took Chan into custody because the captain requested assistance in investigating the incident and in detaining the suspect, so the agent arrested Chan for the crime, and because both Chan and the captain requested that Chan be taken ashore, fearing that Chan would not be safe aboard ship after killing the other crewman, who was a popular man aboard ship. The Silver Shelton sailed after guaranteeing the cost of Chan's air transportation to Hong Kong. The FBI concluded its investigation and transferred custody of Chan to the Immigration and Naturalization Service (INS) which paroled him into the country. He remained in jail from the day he was brought ashore, January 30.

The United States notified Liberian authorities of the incident and furnished them the FBI investigation reports. Liberia charged Chan with murder and, by diplomatic note to the United States Department of State on March 27, requested Chan's extradition to Liberia to stand trial. The U.S. Attorney, under directions from the Justice Department, filed an extradition complaint and requested an arrest warrant in United States District Court on March 31. The District Judge was not satisfied that murder on the high seas was an extraditable offense under the Treaty. He therefore did not issue the arrest warrant until May 8, after receiving an opinion from a State Department legal advisor expressing the view that the offense was extraditable.[2] That same day Chan was arrested and returned to the custody of the U.S. Attorney. He remained in the same jail. Following the required procedure, on May 22, Liberia delivered to the State Department a duly certified, authenticated, formal extradition request. The request and accompanying documents were forwarded to the U.S. Attorney on June 16.

Meanwhile, on June 2, Chan had petitioned the District Court for a writ of habeas corpus. The court held a hearing and on June 16 entered an order granting the writ, quashing the arrest warrant, and releasing Chan to the custody of INS for deportation. The court found that Liberia had not timely produced the formal extradition papers pursuant to Article XI of the Treaty.[3] We

---

2. Article II of the Treaty provides:
   "Persons shall be delivered up according to the provisions of the present Treaty, who shall have been charged with or convicted of the following crimes or offenses:
   "1. Murder . . .
   \*    \*    \*    \*    \*
   "8. Crimes committed at sea:
   (a) Piracy . . .
   (b) Wrongfully sinking or destroying a vessel at sea or attempting to do so;
   (c) Mutiny . . .
   (d) Assault on board ship upon the high seas with intent to do bodily harm."
   54 Stat. 1733 (1939).
   The opinion stated that the negotiators of the treaty did not intend to preclude extradition for murder at sea by not including it in the paragraph enumerating extraditable crimes committed at sea, rather they formulated that paragraph for the purpose of adding specific crimes which by their terms are capable of commission only at sea. The District Judge accepted that interpretation of the treaty, and we also find that interpretation persuasive. See, Sayne v. Shipley, 418 F.2d 679, 684 (5th Cir. 1969), cert. denied, 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 61 (1970).

3. The pertinent portion of Article XI provides:
   "The arrest of the fugitive shall be brought about in accordance with the laws of the respective countries, and if, after an examination, it shall be decided, according to the law and the evidence, that extradition is due pursuant to this Treaty, the fugitive shall be surrendered in conformity to the forms of law prescribed in such cases.

granted the United States' motion to stay the District Court's order pending this appeal.

The District Court decided that March 31 was the "date of commitment" for purposes of the Treaty, and, because Chan was still under arrest two months after that date, ordered him released. We conclude that the "date of commitment" contemplated by the Treaty was not March 31 but May 8, the date Chan was arrested pursuant to the court's warrant. Therefore, the two month period had not expired prior to Chan's habeas corpus hearing.[4]

Additionally, at argument, this court, *sua sponte*, raised the question of whether Chan was actually a "fugitive from justice" under the terms of the Treaty. We consider this issue essential· to a proper determination of this appeal and decide that Chan is a fugitive properly extraditable under the Treaty.

### I

■ Article I of the Treaty provides that the two governments will:

. . . deliver up to justice any person who may be charged with, or may have been convicted of, any of the crimes or offenses specified . . . ., and who shall seek an asylum or shall be found within the territories of the other. . . .

54 Stat. 1733 (1939).

In determining whether Chan is a fugitive from justice within the scope of the Treaty, we assume two possible versions of his entrance into the United States:[5] that the FBI agent arrested Chan in United States waters for a crime committed outside United States jurisdiction, and, alternatively, that the captain and Chan requested that Chan be removed from the ship in fear of his safety.

■■ The FBI agent was authorized to investigate the incident and take Chan into custody both under the FBI's general power to arrest[6] and under international principles of jurisdiction. A coastal state may exercise its jurisdiction to arrest a person and conduct an investigation aboard a foreign vessel in its territorial sea upon a request for assistance by the master of the vessel. Restatement (2d), Foreign Relations Law of the United States, § 46(2)(a).

■■ On the other hand, if Chan's removal was based on both Chan's and the Captain's request, then the action by the United States authorities was valid

---

"The person provisionally arrested shall be released, unless within two months from the date of commitment in the territory of either one of the High Contracting Parties, the formal requisition for surrender with the documentary proofs hereinafter prescribed shall be made as aforesaid by the diplomatic agent or superior consular officer of the demanding government, or, in his absence, by a consular officer thereof.

"If the fugitive criminal shall have been convicted of the crime or offense for which his surrender is asked, a copy of the sentence of the court before which such conviction took place, duly authenticated, shall be produced. If, however, the fugitive is merely charged with crime, a duly authenticated copy of the warrant of arrest in the country where the crime was committed shall be produced, together with the evidence of criminality mentioned in Article I hereof." 54 Stat. 1733 (1939).

4. We pretermit the question of whether the provisional arrest under the Treaty was perfected by receipt of the documents by the State Department or whether the Treaty requires that they be filed in district court. It is unnecessary to consider this question because we find that the "date of commitment" was May 8, which means the two month period had not expired under either filing requirement, and we assume the government will file the extradition documents in district court promptly upon publication of this decision.

5. If, as the evidence indicates, the incident occurred outside United States jurisdictional waters the United States can not prosecute Chan. Liberia, however, may properly exercise its territorial enforcement jurisdiction. Restatement (2d), Foreign Relations Law of the United States, §§ 20, 28, 32 (1965).

6. 18 U.S.C.A. § 3052 (1969).

under immigration laws. Section 212(d)(5) of the Immigration and Nationality Act, 8 U.S.C.A. § 1182(d)(5) (1970), authorizes the Attorney General, in his discretion, to parole aliens otherwise excludable under that section into the United States for reasons in the public interest.[7] The reasons apparent in this situation, physical protection of Chan and potential extradition, are within the public interest. Klapholz v. Esperdy, 201 F.Supp. 294 (S.D.N.Y. 1961), aff'd, 302 F.2d 928 (2d Cir.), cert. denied, 371 U.S. 891, 83 S.Ct. 183, 9 L.Ed.2d 124 (1962) (parole for purpose of prosecution in the United States); cf. United States v. Cristancho-Puerto, 475 F.2d 1025 (1973). Additionally, the Immigration and Nationality Act supplies the authority for Chan's detention by INS. Section 232, 8 U.S.C.A. § 1222 (1970), authorizes observation and examination of an alien to determine admissibility. Section 233, 8 U.S.C.A. § 1223 (1970), authorizes removal from the ship and detention of the alien pending an exclusion decision. See also, United States ex rel. Fink v. Tod, 1 F.2d 246 (2d Cir. 1924), reversed on confession of error, 267 U.S. 571, 45 S.Ct. 227, 69 L.Ed. 793 (1925).[8] Thus we conclude that Chan was lawfully brought into and detained in this country.

Next we consider whether Chan is a fugitive within the terms of the Treaty.[9] The courts have long decided that although an individual leaves the jurisdiction in which the crime was committed before the crime is discovered or before charges are brought, he is a fugitive and is extraditable. Application of D'Amico, 177 F.Supp. 648 (S.D.N.Y. 1960); Ex parte Davis, 54 F.2d 723 (9th Cir. 1931); Hogan v. O'Neill, 255 U.S. 52, 41 S.Ct. 222, 65 L.Ed. 497 (1921); Whiteman, 6 Digest of International Law 768. Also, the manner of departure from the jurisdiction in which the crime was committed is not determinative of whether the individual is a fugitive. He only need be found in the territory of the asylum jurisdiction. United States ex rel. Eatessami v. Marasco, 275 F.Supp. 492 (S.D.N.Y.1967); Hammond v. Sittel, 59 F.2d 683 (9th Cir. 1932). In analogous situations involving extradition between states, individuals transported out of the requesting state by federal or state authorities and held by those authorities are extraditable.[10] Innes v. Tobin, 240 U.S. 127, 36 S.Ct. 290, 60 L.Ed. 562 (1916); Brewer v. Goff, 138 F.2d 710 (10th Cir. 1943); Roberts v. Reilly, 116 U.S. 80, 6 S.Ct. 291, 29 L.Ed. 544 (1885). Under either version of the manner of his entrance into the United States and de-

---

7. The Attorney General has delegated that authority to the district directors of the INS. 8 C.F.R. § 212.5. No question of procedural irregularity in this regard was raised in this appeal.

8. Chan asserts that the United States should have deported him to Hong Kong shortly after admitting him to this country. This claim seems to stem from a letter in which the Silver Shelton's owners guaranteed the cost of Chan's air transportation to Hong Kong. Section 237(a), of the Immigration and Nationality Act, 8 U.S.C.A. § 1227(a) (1970), requires immediate deportation of excluded aliens unless the Attorney General, in his discretion, concludes that immediate deportation is not proper. Additionally the section requires the owner of the vessel on which the alien arrived to bear

the deportation expenses. These statutes placed no affirmative duty on the Attorney General to immediately deport Chan.

9. Extradition treaties should be construed liberally, but absent a treaty or specific authority in a treaty the United States generally will not extradite a fugitive. Valentine v. United States, 299 U.S. 5, 57 S.Ct. 100, 81 L.Ed. 5 (1936); Charlton v. Kelly, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1912).

10. Analogously, courts are not deprived of jurisdiction to try an accused if illegal methods were used to bring the individual before the court. Ker v. Illinois, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952); United States v. Sobell, 244 F.2d 520 (2d Cir. 1957).

spite his detention in this country, Chan was found within the territory of the United States for purposes of the Treaty and he is extraditable.

## II

Secondly, we consider whether Chan was held under arrest beyond the two months allowed by the Treaty. Article XI of the Treaty,[11] in conjunction with 18 U.S.C.A. §§ 3184–92 (1969), provides the procedural framework for extradition of an international fugitive. In the usual case an arrest warrant is sought only after submitting the formal extradition documents to the district court. However, under circumstances which indicate that the individual sought might leave the jurisdiction before formal extradition documents can be obtained, the Treaty contemplates the use of provisional arrest until the formal extradition documents arrive. 18 U.S.C.A. § 3184 (1969) is the authority for United States judicial officers to conduct the requisite proceedings for extradition under a treaty.[12]

In this case the United States authorities sought provisional arrest pending arrival of the Liberian documents. The U.S. Attorney, acting in behalf of Liberia,[13] filed a complaint on March 31. On May 8, when the District Judge was satisfied of the complaint's sufficiency, he issued an arrest warrant committing Chan to the U.S. Attorney. The record indicates that the documents required under the treaty were forwarded to the U.S. Attorney by June 16.

The procedural scheme contemplated by the Treaty provides for provisional arrest of a fugitive in order to secure his presence pending a formal surrender request and an extradition hearing.[14] The two-month time limitation is an agreement designed to protect the interests of the asylum country, the fugitive, and the requesting country. It protects the asylum country from needless expense and effort in detaining a fugitive longer than reasonably necessary for presentation of the formal request, it protects the fugitive from indefinite incarceration without formal charges and a hearing, it allows the demanding country time in which to prepare and transmit the formal request. In order to carry out these purposes, we interpret the term "date of commitment" to mean the date on which a fugitive is arrested for the sole purpose of extradition. To define "date of commitment" as commitment for any purpose would confuse the asylum country about the duration of its responsibility for detaining a fugitive and would deprive the requesting country of the certainty of the two-month period in which to formally request extradition.

In Jiminez v. Aristeguieta, 311 F.2d 547, 564 (5th Cir. 1964), construing the analogous provision in the United States-Venezuela Extradition Treaty, this court held that the two-month detention period commenced on the date the arrest warrant was executed. Voloshin v. Ridenow, 299 F. 134, 137–38 (5th Cir. 1924) involved the analogous provision in the United States-Chile Extradition Treaty. We held that the period prescribed by that Treaty was measured from the date on which the de-

---

11. See fn. 4, supra.

12. § 3184 provides a framework for either an arrest warrant based on a complaint stemming from formal extradition papers, or an arrest warrant for provisional arrest pending arrival of the formal extradition documents.

13. See, Fernandez v. Phillips, 268 U.S. 311, 45 S.Ct. 541, 69 L.Ed. 970 (1925).

14. Despite Chan's release from provisional arrest and the quashing of the arrest warrant the government could have proceeded immediately with a complaint based upon the official extradition documents, which apparently would be sufficient for another arrest warrant under 18 U.S.C.A. § 3184, and a prompt extradition hearing. The treaty does not provide that all proceedings shall cease, merely that the fugitive shall be released from detention under the warrant and provisional arrest. Karadzole v. Artukovic, 170 F.Supp. 383, 386 (S.D.Cal. 1959).

**340**

fendant was arrested on the basis of the complaint. *See,* Ex parte Reed, 158 F. 891 (D.N.J.1908).

Chan's commitment and detention under parole on January 30 was not a provisional arrest solely for the purpose of extradition. He was an excludable alien held pending whatever future action the Attorney General and the INS deemed proper, including deportation, immigration into the United States, or arrest for extradition.

The two-month period from Chan's date of commitment for the purpose of extradition had not expired and the District Court incorrectly released him.

Reversed and remanded.